# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKE LIPSCHULTZ,<br><br>        Plaintiff,<br><br>vs.<br><br>GOOD KNIGHT INN, CORPORATION, a California Corporation; and DOES 1-10,<br><br>        Defendants. | Case No.: CV11-07913 DSF(JCx)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER COURT TRIAL**<br><br>**(NOT FOR PUBLICATION)** |

    This cause came for trial on August 21, 2012, before the Court sitting without a jury as to Plaintiff Mike Lipschultz's claims for violation of the Americans with Disabilities Act and the Unruh Civil Rights Act.[1]  The Court, having heard the testimony and other evidence offered by the parties, and having considered the trial briefs, memoranda, and proposed findings of facts and conclusions of law, makes the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

---

[1] Proposed Final Pretrial Conference Order (doc. 38) at 4.

1

## I.  FINDINGS OF FACT

1. Plaintiff Mike Lipschultz grew up in the San Fernando Valley, (TT, 41:2-3)[2], but has resided in Bullhead City, Arizona since 2001/2002, (TT, 12:1-5).
2. Defendant Good Knight Inn Corporation owns and operates the Good Knight Inn Motel located at 9247 Sepulveda Boulevard, North Hills, CA. (TT II, 32: 9-16.)
3. Mohammed Manik is the administrator of the Good Knight Inn Motel and lives within the premises. (TT II, 35: 19-36:1.)
4. Plaintiff has a moderate to severe hearing loss that was first diagnosed in 1978 or 1979. (TT, 14: 21-25.) Plaintiff's hearing loss has deteriorated over time, and has been wearing hearing aids in both ears for about four years. (TT, 15: 1-11.)
5. With the assistance of over the counter hearing aids, Plaintiff was able to hear questions and testify at trial.
6. Plaintiff does not wear his hearing aids while he sleeps because they are not comfortable, and there is a chance they might fall out, he might lose them in the bedding, he might damage them, or they might damage his ear. (TT, 15:25-16:11.)
7. Plaintiff suffers from migraine headaches, which sometimes come without warning. (TT, 21:15.) Plaintiff has ongoing treatment for migraines with a neurologist at least every three months. He takes Maxalt, Fioricet with codeine, and other medication to treat the migraines. (TT, 21:1-14.)
8. Since October 2005, Plaintiff has owned a male Dachshund named "Scuba." (TT, 14:3-8; TT II, 18:15-17.)

---

[2] The Trial Transcript for the morning session is designated "TT" and the afternoon session is designated "TT II."

9. Scuba has been trained to signal or alert Plaintiff to sounds while Plaintiff is sleeping without his hearing aids. (TT, 16:15-24.) Scuba is trained to wake Plaintiff by touching Plaintiff with his cold nose, or to nudge Plaintiff awake, and to apply pressure or push Plaintiff to wake him, if necessary. (TT17:3-11.)

10. Plaintiff trained Scuba himself, using a reward-based system, beginning from the day Plaintiff first got Scuba. (TT, 17:12-19:12.) He used basic obedience training: mainly control off leash, responding to hand signals, positive reinforcement, etc. (TT II, 19:14-20:9.)

11. Plaintiff is not a professional dog trainer, though he has trained his own dogs before Scuba. (TT, 18:7-9; TTII, 20:12-15.) The basic training was similar to the way one would train a dog to do anything one wanted the dog to do. (TT II, 20:1-9.)

12. Plaintiff has reason to visit California because he has friends and family that live in the West Los Angeles, Inglewood, Culver City and Indian Hills areas, in Agoura Hills and as far out as Camarillo, Oxnard. (TT, 12:16-23.)

13. Plaintiff is even more dependent on Scuba when he is away from home and staying in a motel or hotel. (TT, 20:3-18.)

14. Plaintiff traveled to Oxnard and the surrounding areas on October 22, 2010 to visit cousins that lived there, and to shop. (TT, 12:25-13:14; 43:7-14.)

15. On October 22, 2010, Plaintiff left his cousins' home, accompanied by Scuba, and travelled on the 118 through the San Fernando area on his way home to Arizona. (TT, 13:16-25.)

16. Plaintiff began suffering from a migraine headache. Such headaches distract his driving. He wanted to stop driving and get some sleep. (TT, 21:5-19.)

17. He decided to "play it safe" and get off on Sepulveda Boulevard to find a motel where he could take some medication and sleep, rather than "push it." (TT, 22:1-15.)

18. Before the October 22, 2010 incident, Plaintiff had stopped at a motel off the 118 on Sepulveda Boulevard that had accommodated him. Because of his migraine, he may have forgotten about it, or driven by it without noticing it. (TT, 58: 1-23).

19. Plaintiff stopped at the Hometown Inn, but did not stay long enough to ask for a room. (TT, 22:24-23:20.) He then stopped and asked for a room at the Pink Cloud Motel. Plaintiff tried to enter the premises to rent a room with Scuba. However, the front door was locked. The person behind the door at the front office told Plaintiff, "No pets, no pets." (TT, 25: 1-20.)

20. Plaintiff next stopped at the Good Knight Inn with Scuba. (TT, 26:9-27:6.) He talked to a person behind a glass partition, and asked to rent a room. The person told Plaintiff that the motel does not allow pets. Plaintiff responded that Scuba was a service animal, but the person would not allow Plaintiff to rent a room with Scuba. (TT, 27:9-29:10.) Defendant appears to contend that this person offered to talk to a supervisor, but that Plaintiff left without accepting this offer, citing to Ex. 4, the recording of the conversation made by Plaintiff. (Def.'s Proposed FFCL (doc. 65), II.15.) There is no real support in the record for that contention. The recording is unintelligible in part. Viewing it in the light most favorable to Defendant, it is - at best - ambiguous. However, after listening to the recording, the Court concludes that the person was not offering to speak to a supervisor - or have Plaintiff do so. He or she was confirming that the supervisor had determined that animals were not permitted. (Ex. 4.) In the absence of the recording, there is no evidence whatever that a supervisor might have allowed Scuba to enter.

21. Plaintiff had a similar experience when he next stopped at the Budget Inn. (TT, 29:16-24.)

22. After Plaintiff left Budget Inn, he pulled onto a side street and slept in his car. (TT, 30:5-9.)

23. Plaintiff sent demand letters for damages to the Pink Cloud Motel, the Good Knight Inn, and the Budget Inn. (TT, 67:14-24.)

24. Plaintiff called all the motels on October 25, 2010 and copy and pasted all letters to the motels on October 29, 2010. (TT, 68: 4-9.)

25. Plaintiff has other demand letters such as for breach of contract, bad checks, property damages, and personal injury. (TT II, 7 4-7.)

26. Plaintiff sent as many as 30 demand letters in 2010, (TT II, 8:11-13), and 40-45 more demand letters relating to access law since after October 29, 2010. (TT II, 9: 21-24.)

27. Mohammed Manik testified that Good Knight Inn's policy is to allow service animals, signal dogs, or guide dogs, but not to allow any pets. (TT II, 48: 14-22). The Court need not decide whether Mr. Manik's testimony is credible, because –regardless of what policy may have existed – Good Knight Inn did not allow Plaintiff to rent a room with his service animal on October 22, 2010.

28. Plaintiff comes to the area where the Good Knight Inn is located approximately two or three times a year on his trips to visit friends and family, and to do business. (TT, 37:25-38:8.)

## II. CONCLUSIONS OF LAW

1.   Under both federal and California law, individuals with disabilities must be permitted to be accompanied by their service animals in places of public accommodation. 28 C.F.R. § 36.302(7); Cal. Civ. C § 51(f).

2. A disability is a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(1)(A). Hearing is a major life activity. 42 U.S.C. § 12102(2)(A). "The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as . . . hearing aids." 42 U.S.C. § 12102(4)(E)(i)(II).

3. While medical testimony or records would have been stronger evidence of Plaintiff's disability, his testimony alone was sufficient. Defendant provides no authority suggesting that medical evidence is required. If Defendant did not believe Plaintiff's claim, Defendant could have engaged in discovery on that issue. Plaintiff has established by a preponderance of the evidence that he suffered from moderate to severe hearing loss on October 22, 2010.

4. Defendant admits the Good Knight Inn is a place of public accommodation under the relevant statutes. (Def.'s Proposed FFCL, II.2.) Defendant is therefore required to comply with the Americans with Disabilities Act. 42U.S.C § 12181.

5. A service animal is "any guide dog, signal dog, or other animal individually trained to do work or perform tasks for the benefit of an individual with a disability, including but not limited to . . . alerting individuals with impaired hearing to intruders or sounds." 28 C.F.R. § 36.104. (version in effect on 10/22/10). Defendant admits there is no requirement for any specific amount or type of training that an animal must receive to qualify as a service animal. (Def.'s Proposed FFCL, IV.2.) Defendant also concedes that there is no requirement that a service animal be trained by a certified trainer or that the animal provide any specific type or amount of work for the disabled person. Id. Instead, the relevant question is whether the animal helps the disabled person perform tasks to ameliorate the ADA disability. Id. Plaintiff testified that he trained Scuba to signal and alert him to sounds while he sleeps without his hearing aids. Plaintiff

has established by a preponderance of the evidence that Scuba qualifies as a service animal.

6.  Evidence of Plaintiff's litigious nature, especially his numerous other access-related lawsuits, is relevant.  It provides some evidence that Plaintiff was not looking to rent a room, but rather seeking grounds to file lawsuits.  Other evidence supports this conclusion.  Plaintiff's voice on the recording that he, himself, submits does not sound like the voice of someone suffering the debilitating pain of a migraine – as Plaintiff claimed to be.  Plaintiff's sarcastic remark, "Not so good night at the Good Knight Inn," (Ex. 4), also raises questions for the Court.  In addition, Plaintiff appears to have stayed with relatives on this occasion, rather than in a motel.  Nevertheless, on this record, and in light of Plaintiff's uncontroverted testimony that he travels to the area frequently and had previously stayed at a motel in the area, the Court finds by a bare preponderance of the evidence that Plaintiff has standing.

7.  Plaintiff's testimony, even without the recordings he submits as evidence, establishes by a preponderance of the evidence that he was refused accommodations at the Good Knight Inn because he had a dog, even though the dog was a service animal.

8.  Therefore, Plaintiff has established by a preponderance of the evidence that Defendant violated the ADA.

9.  Defendant admits that the same standards for liability apply to both a violation of the ADA and the Unruh Civil Rights Act.

10.  Thus, because Defendants has violated the ADA, Defendant has also violated the Plaintiff's rights under the Unruh Civil Rights Act.

11.  Defendant maintains that its policy is to allow service animals, but that policy was not followed on October 22, 2010.  Therefore, an injunction is appropriate.

      12.    Plaintiff is entitled to a statutory award of $4,000 under Cal. Civ. § 52(a).

Plaintiff is to prepare a proposed judgment.

Dated: January 7, 2013.

                      Dale S. Fischer
                      United States District Judge